**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ADVANCED MEDIA NETWORKS, LLC, §<br>§<br>    Plaintiff, §<br>§<br>v. §<br>§<br>T-MOBILE US, INC.; AND §<br>T-MOBILE USA, INC., §<br>§<br>    Defendants. §<br>§ | C.A. No. 2:14-cv-_____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Advanced Media Networks, LLC ("Advanced Media") files this Complaint for patent infringement against Defendants T-Mobile US, Inc. and T-Mobile USA, Inc., and alleges as follows:

## PARTIES

1.      Plaintiff Advanced Media Networks is a California limited liability company having a place of business at 5900 Wilshire Boulevard, Suite 2600, Los Angeles, CA, 90036.

2.      Defendant T-Mobile US, Inc. ("T-Mobile US") is a corporation organized under the laws of the State of Delaware, and has a principal place of business at 7624 Warren Parkway, Frisco, Texas 75034 and/or is conducting business through an affiliate located at this address. T-Mobile has a registered agent for service, Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

3.      T-Mobile US was originally incorporated as MetroPCS Communications, Inc. under the laws of the State of Delaware in 2004.  The name of Metro PCS was changed to T-Mobile US on April 30, 2013.  Presently, MetroPCS is an operating division of T-Mobile US that has a principal place of business at 2250 Lakeside Blvd., Richardson, Texas, 75082.

4.      Defendant T-Mobile USA, Inc. ("T-Mobile USA") is a corporation organized under the laws of the State of Delaware, and has a principal place of business at 7624 Warren Parkway, Frisco, Texas  75034 and/or is conducting business through an affiliate located at this address.  T-Mobile has a registered agent for service, Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701.  T-Mobile US wholly owns T-Mobile USA. *See* T-Mobile US's Form 10-K for Year End 2013, p. 3.  T-Mobile USA is the principal operating subsidiary of T-Mobile US.  *Id*.

5.      T-Mobile US, T-Mobile USA, and MetroPCS are collectively referred to herein as "T-Mobile."

## JURISDICTION AND VENUE

6.      This civil action for patent infringement arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et* seq.  This Court has jurisdiction over the claims presented herein pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      On information and belief, T-Mobile makes, imports, uses, sells, and/or offers for sale the Accused Instrumentalities and Services (as defined below) within the United States, including this District, that infringe one or more claims of United States Patent No. 5,960,074 entitled "MOBILE TELE-COMPUTER NETWORK FOR MOTION PICTURE, TELEVISION AND TV ADVERSTISING PRODUCTION " (the "`074 Patent" or "Asserted Patent").  The `074 Patent was duly and legally issued by the United States Patent and Trademark Office on September 28, 1999.  A true and correct copy of the `074 Patent is attached hereto as Exhibit 1.

8.      On May 11, 2010, a request for reexamination was filed.  On November 22, 2011, a reexamination certificate was issued that, among other things, confirmed the patentability of

Claims 1, 10-14, 21-28, and 37-38.  Other claims were confirmed as amended, and new claims were added.  A true and correct copy of the reexamination certificate is shown in Exhibit 1.

9.      On November 29, 2012 and February 6, 2013, two additional reexamination requests were filed.  These requests were merged.  On April 23, 2014, a reexamination certificate was issued that, among other things, confirmed the patentability of Claims 1-23, 28-37, 41-42, 44-63, 67-70, 72-73, 75-76, 91-99, 101-107, 123-124, and 126.  The patentability of other claims was confirmed as amended, and new claims were added.  A true and correct copy of the reexamination certificate is shown in Exhibit 1.

10.     T-Mobile operates a nationwide digital wireless telecommunications system, and in particular, operates the system to offer wireless services, including wireless broadband services, to subscribers.  "And here in the U.S., T-Mobile announced it had delivered nationwide 4G LTE covering more than 200 million people in 233 metro areas coast to coast."  Exhibit 2, T-Mobile Annual Report to Stockholders 2013, p. 2, available at: http://investor.t-mobile.com/Cache/1500059458.PDF?Y=&O=PDF&D=&fid=1500059458&T=&iid=4091145 In 2013 alone, T-Mobile "gained 4.4 million new customers…becom[ing] the fastest-growing wireless company in the U.S."  *Id.* at p. 3.  Hence, T-Mobile markets and sells its wireless services throughout the United States, including within this District.

11.     T-Mobile through its operating division MetroPCS offers services "[r]iding on the nationwide T-Mobile network."  www.metropcs.com.  Hence, MetroPCS markets and sells its wireless services throughout the United States, including within this District.

12.     On information and belief, T-Mobile directly and/or indirectly imports, manufactures, uses, offers for sale, and/or sells the Accused Instrumentalities and Services (as

defined below) within the United States, including this District, that infringe one or more claims of the `074 Patent.

13.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1400(b) and 1391(c).

## GENERAL ALLEGATIONS

14.     Advanced Media is the owner by assignment of the Asserted Patent, and is entitled to sue for past and future infringement thereof.

## T-MOBILE

### T-Mobile's Accused Wireless Telecommunications Network

15.     T-Mobile is engaged in the business of selling digital wireless services to subscribers.  T-Mobile operates a vast wireless telecommunications network over which subscribers are able to communicate voice data as well as other data using broadband services. T-Mobile's network consists of a large multitude of cells that communicate with mobile devices via microwaves.  The cells typically provide redundant overlapping coverage for a given area such that a subscriber moving with a T-Mobile device from one area to the next may seamlessly be handed-off from one cell to the next without dropping service.  *See, e.g.*, Newton's Telecom Dictionary, 16th Edition, p. 165 (16th Ed.  2000) (attached hereto as Exhibit 3) (under the definition of "Cell Switching," which includes the statement: [s]econd, because of the closeness of the cell sites, any phone conversation may be simultaneously heard by several MTSOs [Mobile Telephone Switching Offices].  As a result, the MTSO constantly monitors signal strength of both the caller and the receiver.  When signal strength begins to fade, the MTSO locates the next best cell site and re-routes the conversation to maintain the communications link. The switch from one cell site to another takes about 300 milliseconds and is not noticeable to the user.  The cells overlap one another and operate at different transmitting and receiving

frequencies in order to eliminate cross-talk when transmitting from cell to cell.").  Hence, the

T-Mobile system (the "Accused System") constitutes a "redundant microwave communication

system" as this phrase is used in claims of the `074 Patent.

### T-Mobile's Accused Consumer Devices

16.     A subscriber to T-Mobile's services over the Accused System typically buys or

leases a digital communications device such as a smart phone, tablet computer ("tablet"), router,

gateway, or other mobile device containing a WLAN network access point (i.e. "HotSpot").

### T-Mobile's Accused Smart Phones

17.     Examples of smart phones currently imported, offered for sale, and/or sold by

T-Mobile are the Alcatel One Touch Evolve 2, Alcatel One Touch Fierce 2, Apple iPhone 5c,

Apple iPhone 5s, Apple iPhone 6, Apple iPhone 6 Plus, LG G3, LG F3Q, LG Optimus L90,

Nokia Lumia 635, Samsung Galaxy Avant, Samsung Galaxy Note 3, Samsung Galaxy Note 4,

Samsung Galaxy Note Pro 10.1 2014, Samsung Galaxy S 4, Samsung Galaxy S 5, and all past,

present and future cellular phones that offer connectivity to other devices to the T-Mobile

network over a local area network provided by the device (these and all similar cellular phones

referred to herein as the "Accused Phones").  Each of these Accused Phones may be configured

to constitute a "mobile hub station configured to transfer information as a single nomadic

transmission/reception point between the microwave communication system", *i.e.,* the T-Mobile

telecommunications system, and a "wireless LAN [local area network] using an Ethernet packet

switching protocol," "the TCP/IP protocol," and/or "an Internet protocol" (as these terms are

used in the claims, *e.g.,* Claims 1, 3,  and 128, of the `074 Patent).  Whether or not a subscriber

may utilize the mobile hotspot or tethering feature of an Accused Phone is controlled by

T-Mobile.

18.     For example, the Alcatel One Touch Fierce 2 provides a local area network to which another device may connect through the Alcatel One Touch Fierce 2 acting as a wireless hub to provide connectivity to the T-Mobile telecommunications network when the "Portable Wi-Fi hotspot" mode is enabled.  *See* Exhibit 4, p. 72. (under "Sharing your phone's mobile data connection", "You can share your phone's mobile data connection…with up to eight devices at once by turning your phone into a portable Wi-Fi hotspot.").  As the "Portable Wi-Fi hotspot" feature uses the phone's mobile data connection, T-Mobile controls whether or not a user may utilize the Alcatel One Touch Fierce 2 as a mobile hotspot.

19.     As another example, the Apple iPhone 5s provides a local area network to which another device may connect the iPhone acting as a wireless hub to provide connectivity to the T-Mobile telecommunications network when the "Personal Hotspot" is enabled.  *See* Exhibit 5, pp. 33 (under "Personal Hotspot": "Use Personal Hotspot to share your iPhone Internet connection. Computers can share your Internet connection using Wi-Fi….").  The manual for the Apple iPhone 5s notes "[The Personal Hotspot] feature may not be available with all carriers. Additional fees may apply. Contact your carrier for more information." *Id*. at p. 33.  Hence, T-Mobile controls whether or not a user may utilize the Apple iPhone 5s as a mobile hotspot.

20.     As another example, the LG G3 phone provides a local area network to which another device may connect through the LG G3 acting as a wireless hub to provide connectivity to the T-Mobile telecommunications network when the "Mobile HotSpot" is enabled.  *See* Exhibit 6, p. 89 (under "Mobile HotSpot").  As noted in the manual for the LG G3, "Mobile Hotspots require an appropriate data plan.  Devices connected to your Mobile Hotspot use data from your plan." *Id*. at p. 90.  Hence, T-Mobile controls whether or not a user may utilize the LG G3 as a mobile hotspot.

21.     As another example, the Nokia Lumia 635 phone provides a local area network to which another device may connect through the Nokia Lumia 635 acting as a wireless hub to provide connectivity to the T-Mobile telecommunications network when the "Internet Sharing" mode is enabled.  *See* Exhibit 7, p. 80 ("Connect your computer to the web":  "Turn your phone into a Wi-Fi hotspot, and use your mobile data connection to access the internet with your laptop or other device.").  As noted in the manual for the Nokia Lumia 635, "The other device uses data from your data plan, which may result in data traffic costs.  For info on availability and costs, contact your network service provider."  *Id*.  Hence, T-Mobile controls whether or not a user may utilize the Nokia Lumia 635 as a mobile hotspot.

22.     As another example, the Samsung Galaxy S 5 phone provides a local area network to which another device may connect through the Samsung Galaxy S 5 acting as a wireless hub to provide connectivity to the T-Mobile telecommunications network when the "Mobile HotSpot" feature is enabled.  *See* Exhibit 8, p. 71 (under "Mobile HotSpot":  "This feature allows you to turn your device into a Wi-Fi hotspot.").  As noted in the manual for the Samsung Galaxy S 5, "You must have a tethering plan on your account in order to use the Mobile HotSpot."  *Id*.  Hence, T-Mobile controls whether or not a user may utilize the Samsung Galaxy S 5 as a mobile hotspot.

23.     As another example, the T-Mobile Prism II phone provides a local area network to which another device may connect through the T-Mobile Prism II acting as a wireless hub to provide connectivity to the T-Mobile telecommunications network when the "Portable Wi-Fi Hotspot" mode is enabled.  *See* Exhibit 9, pp. 25 – 26 ("You can share your mobile phone's data connection with a number of devices at the same time, by turning your phone into a portable Wi-Fi hotspot.").  The T-Mobile Prism II is a T-Mobile phone and its "Portable Wi-Fi Hotspot"

feature uses the phone's mobile data connection (the T-Mobile network), hence T-Mobile controls whether or not a user may utilize the T-Mobile Prism II as a mobile hotspot.

### T-Mobile's Accused Tablets

24.     In addition to the Accused Phones and Accused Tablets, T-Mobile also offers for sale and sells the following tablet devices that have the capability to connect to the T-Mobile broadband wireless network as well as providing a local area network (LAN) over which other devices may connect to the T-Mobile wireless network:  Apple iPad Air, Apple iPad Mini with Retina display, Samsung Galaxy Tab 4 8.0 and all past, present and future tablets that offer connectivity to other devices to the T-Mobile network over a local area network provided by the device (these and all similar mobile tablets referred to herein as the  "Accused Tablets").  Each of these Accused Tablets may be configured to constitute a "mobile hub station configured to transfer information as a single nomadic transmission/reception point between the microwave communication system", *i.e.,* the T-Mobile telecommunications system, and a "wireless LAN [local area network] using an Ethernet packet switching protocol," "the TCP/IP protocol," and/or "an Internet protocol" (as terms are used in the claims, *e.g.* Claims 1, 3, and 128, of the `074 Patent).

### T-Mobile's Accused Mobile Access Points

25.     In addition to the Accused Phones, T-Mobile also offers for sale and sells the base stations, including but not limited to the Samsung LTE Mobile HotSpot PRO (*See* Exhibit 10), each of which connects to the T-Mobile wireless network and provides a mobile local area network (LAN) through which other devices may connect to the T-Mobile network.  All past, present and future mobile stations that offer connectivity to other devices to the T-Mobile network over a local area network provided by the device are referred to herein as the "Accused

Mobile Access Points."  The Accused Phones, Accused Tablets, and Accused Mobile Access

Points are collectively referred to herein as the "Accused Devices."  Each of these Accused

Mobile Access Points may be configured to constitute a "mobile hub station configured to

transfer information as a single nomadic transmission/reception point between the microwave

communication system", *i.e.,* the T-Mobile telecommunications system, and a "wireless LAN

[local area network] using an Ethernet packet switching protocol," "the TCP/IP protocol," and/or

"an Internet protocol" (as these terms are used in the claims, *e.g.,* Claims 1, 3, and 128, of the

`074 Patent).

### T-Mobile Controls Access to its Telecommunications System

26.     A subscriber who purchases one of the Accused Devices must subscribe to a

T-Mobile data plan to use the device to connect to the internet over T-Mobile's wireless network.

In order for an Accused Device to be connected to T-Mobile's wireless system, the device must

have a SIM card provided by T-Mobile that contains information that is associated with a

subscriber's account and which enables the Accused Device to be used on T-Mobile's wireless

network.  In fact, a SIM card can be purchased by or reprogrammed for a subscriber to enable a

device not purchased through T-Mobile to be used on T-Mobile's wireless network (any such

phone, tablet or other device utilizing a T-Mobile SIM card and providing a LAN for tethering or

otherwise connecting other devices, is also included within the definition of "Accused Devices").

The SIM card is the key by which T-Mobile controls which devices may connect to the T-Mobile

wireless network.  Without T-Mobile's SIM card, the Accused Device is useless for its intended

purpose of facilitating wireless communications over a wireless network, although certain

features such as calculator or camera functionality may still be used.  The code, data and/or other

information stored on the SIM card that facilitate T-Mobile's control over which devices may be

connected to the T-Mobile wireless communications network.  The SIM card identifies the subscriber to T-Mobile's network and facilitates T-Mobile in billing the user for the services that the subscriber uses.  In addition, in the event the subscriber's service or subscription is terminated, T-Mobile may de-activate the device via the use of the code, data and/or other information stored on the SIM card so that the device cannot connect to the T-Mobile telecommunications network.

27.     At least as to the Accused Phones and the Accused Tablets, the data plan typically, without additional fees, only allows the device itself to connect to the T-Mobile wireless network.  In order to connect other devices through the LAN provided by one of the Accused Phones or the Accused Tablets, historically, a subscriber has paid an additional fee or subscribed to a more expensive and a higher capacity data plan for the ability to "tether" additional devices through the Accused Phone or Accused Tablet over the LAN provided by same.  *See, e.g.*, Exhibit 6, p. 90 [LG G3 manual] ("Mobile Hotspots require an appropriate data plan. Devices connected to your Mobile Hotspot use data from your plan.").  T-Mobile has typically charged $14.99 a month for this additional "tethering" capability.  More recently, "tethering" appears to be included in some T-Mobile data plans, such as "Unlimited tablet or Hotspot data plans," which also refer to "tethering" as a "mobile hotspot."  *See* Exhibits 11-16. Even when an additional fee is not charged by T-Mobile for tethering and/or mobile hotspot service, the use of tethering and/or mobile hotspot service results in a higher amount of data downloaded by a subscriber which, in turn, results in higher fees to T-Mobile. Telecommunications services offered for sale and sold by T-Mobile in connection with the Accused Devices, including but not limited to the "Tethering" services, the "mobile hotspot"

service, and the services sold in connection with data plans associated with the Accused Base

Stations, are referred to herein as the "Accused Services."

28.     The T-Mobile Accused System and the Accused Devices are collectively referred

to herein as the "Accused Instrumentalities."  The Accused Instrumentalities and the Accused

Services are collectively referred to herein as the "Accused Instrumentalities and Services."

### T-Mobile's Infringing Acts

29.     T-Mobile has directly infringed and continues to directly infringe one or more

claims of the `074 Patent by making, having made, importing, using, offering for sale, and/or

selling the Accused Instrumentalities and Services.

30.     For example, but not as a limitation, T-Mobile's direct infringement of Claims 1,

3, and 128 of the `074 Patent is shown in each of the claim charts of Exhibits 17-25.

31.     T-Mobile's 4G LTE network is a redundant microwave communication system.

32.     Each of the Accused Instrumentalities is capable of providing a wireless local area

network.

33.     Each of the Accused Instrumentalities is capable of providing a mobile Wi-Fi

Hotspot.

34.     Each of the Accused Instrumentalities is capable of acting as a mobile hub station.

35.     Each of the Accused Instrumentalities is capable of transferring information

between T-Mobile's microwave communication system and a wireless LAN using an ethernet

packet switching protocol.

36.     Each of the Accused Instrumentalities is capable of transferring information

between T-Mobile's microwave communication system and a wireless LAN using the TCP/IP

protocol.

37.     Each of the Accused Instrumentalities is capable of transferring information between T-Mobile's microwave communication system and a wireless LAN using an Internet protocol.

38.     Therefore, by way of example, but not as a limitation, T-Mobile has and continues to directly infringe Claims 1, 3, and 128 of the `074 Patent.  In addition, T-Mobile has and continues to infringe other Claims of the `074 Patent.

39.     Furthermore, T-Mobile has engaged in indirect infringement since at least as early as November 6, 2012, the date it received actual notice (as set forth below), and continues to indirectly infringe one or more claims of the `074 Patent by providing its customers with the infringing Accused Instrumentalities and Services in order to enable those customers to use the T-Mobile Accused System in connection with one or more of the Accused Devices, in a manner covered by one or more of the claims of the Asserted Patent.  T-Mobile has and continues to actively promote tethering and/or local hotspot functionality to its subscribers knowing that the subscriber's utilization of such tethering or local hotspot functionality on one or more of the Accused Devices constitutes infringement of one or more claims of the Asserted Patent.  Each subscriber that has tethering or local hotspot capability as part of their T-Mobile data plan or that pays an extra fee for tethering or local hotspot service in connection with an Accused Device directly infringes one or more claims of the Asserted Patent by their use of the Accused Instrumentalities in connection with tethering or local hotspot service.

**T-Mobile Received Actual Notice**

40.     On or about November 6, 2012, Advanced Media sent a letter to T-Mobile, which letter was actually received by T-Mobile, a true and correct copy of which is attached hereto as Exhibit 26 (the "Letter").  By the Letter, AMN notified T-Mobile that its smartphones and 4G

Mobile HotSpot devices infringed the '074 Patent.  A copy of the '074 Patent and its prosecution history were provided to T-Mobile with the Letter.

41.     In spite of such actual knowledge of the '074 Patent, T-Mobile continued and continues to infringe one or more claims of the '074 Patent.

## METROPCS

### MetroPCS's Accused Wireless Telecommunications Network

42.     MetroPCS is engaged in the business of selling digital wireless services to subscribers.  MetroPCS offers service on the T-Mobile Network.  *See* Exhibit 27 ("MetroPCS is bringing its convenient neighborhood access, great service and unparalleled value to more people and connecting them to T-Mobile's powerful nationwide 4G and 4G LTE network.").  Using T-Mobile's Network, MetroPCS offers a vast wireless telecommunications network over which subscribers are able to communicate voice data as well as other data using broadband services. MetroPCS's Network consists of a large multitude of cells that communicate with mobile devices via microwaves.  The cells typically provide redundant overlapping coverage for a given area such that a subscriber moving with a MetroPCS device from one area to the next may seamlessly be handed-off from one cell to the next without dropping service.  *See, e.g.*, Newton's Telecom Dictionary, 16th Edition, p. 165 (16th Ed.  2000) (attached hereto as Exhibit 3) (under the definition of "Cell Switching," which includes the statement: [s]econd, because of the closeness of the cell sites, any phone conversation may be simultaneously heard by several MTSOs [Mobile Telephone Switching Offices].  As a result, the MTSO constantly monitors signal strength of both the caller and the receiver.  When signal strength begins to fade, the MTSO locates the next best cell site and re-routes the conversation to maintain the communications link.  The switch from one cell site to another takes about 300 milliseconds and is not noticeable to the user.  The cells overlap one another and operate at different transmitting

and receiving frequencies in order to eliminate cross-talk when transmitting from cell to cell."). Hence, the system used by MetroPCS (the "MetroPCS Accused System") constitutes a "redundant microwave communication system" as this phrase is used in claims of the `074 Patent.

## MetroPCS's Accused Consumer Devices

43.     A subscriber to MetroPCS's services over the MetroPCS Accused System typically buys or leases a digital communications device such as a smart phone, tablet, router, gateway, or other mobile device containing a WLAN network access point (i.e. "HotSpot").

## MetroPCS's Accused Smart Phones

44.     Examples of smart phones currently imported, offered for sale, and/or sold by MetroPCS are the Alcatel One Touch Evolve, Kyocera Hydro Life, LG Optimus F6, LG Optimus L70, Samsung Galaxy Mega, Samsung Galaxy S 4, Samsung Galaxy S 5, ZTE Concord II, and all past, present and future cellular phones that offer connectivity to other devices to the MetroPCS network over a local area network provided by the device (these and all similar cellular phones referred to herein as the "Accused Phones").  Each of these Accused Phones may be configured to constitute a "mobile hub station configured to transfer information as a single nomadic transmission/reception point between the microwave communication system", *i.e.,* the telecommunications system used by MetroPCS, and a "wireless LAN [local area network] using an Ethernet packet switching protocol," "the TCP/IP protocol," and/or "an Internet protocol" (as terms are used in the claims, *e.g.*, Claims 1, 3, and 128, of the `074 Patent).  Whether or not a subscriber may utilize the mobile hotspot or tethering feature of an Accused Phone is controlled by MetroPCS.

45.     For example, the Alcatel One Touch Evolve provides a local area network to which another device may connect through the Alcatel One Touch Evolve acting as a wireless

hub to provide connectivity to the telecommunications network used by MetroPCS when the "Portable W-Fi Hotspot" is enabled.  *See* Exhibit 28, p. 70 (under "Sharing your phone's mobile data connection": "You can share your phone's mobile data connection…with up to eight devices at once by turning your phone into a portable Wi-Fi hotspot").  As the "Portable Wi-Fi Hotspot" feature uses the phone's mobile data connection, MetroPCS controls whether or not a user may utilize the Alcatel One Touch Evolve as a mobile hotspot.

46.     As another example, the Kyocera Hydro Life phone provides a local area network to which another device may connect through the Kyocera Hydro Life acting as a wireless hub to provide connectivity to the telecommunications network used by MetroPCS when the "Mobile Hotspot" is enabled.  *See* Exhibit 29, p. 91 ("Mobile Hotspot":  "The Mobile Hotspot turns your phone into a wireless router and shares your phone's data connection with one or more computers or mobile devices using Wi-Fi.").  As noted in the manual for the Kyocera Hydro Life, "You need to add the Mobile Hotspot feature to your rate plan following the onscreen instructions to use your phone's tethering and hotspot capabilities."  *Id*. at p. 90.  Hence, MetroPCS controls whether or not a user may utilize the Kyocera Hydro Life as a mobile hotspot.

47.     As another example, the LG Optimus F6 phone provides a local area network to which another device may connect through the LG Optimus F6 acting as a wireless hub to provide connectivity to the telecommunications network used by MetroPCS when the "Mobile Hotspot" is enabled.  *See* Exhibit 30, p. 26 ("Smartphone Mobile Hotspots":  "You can also use your phone to provide a mobile broadband connection for up to 8 other devices.").  As noted in the manual for the LG Optimus F6, "To use your phone's Hotspot capability, you must have the

Smartphone Mobile Hotspot service added to your rate plan." *Id*. Hence, MetroPCS controls whether or not a user may utilize the LG Optimus F6 as a mobile hotspot.

48.     As another example, the Samsung Galaxy S 5 phone provides a local area network to which another device may connect through the Samsung Galaxy S 5 acting as a wireless hub to provide connectivity to the telecommunications network used by MetroPCS when the "Mobile Hotspot" feature is enabled. *See* Exhibit 31, p. 187 ("[The Mobile Hotspot] feature allows you to turn your device into a Wi-Fi hotspot."). As noted in the manual for the Samsung Galaxy S 5, "You must have a tethering plan on your account in order to use the Mobile Hotspot." *Id*. Hence, MetroPCS controls whether or not a user may utilize the Samsung Galaxy S 5 as a mobile hotspot.

49.     As another example, the ZTE Concord II phone provides a local area network to which another device may connect through the ZTE Concord II acting as a wireless hub to provide connectivity to the telecommunications network used by MetroPCS when the "Mobile HotSpot" mode is enabled. *See* Exhibit 32, p. 51 ("You can share your phone's data connection with other devices by turning your phone into a portable Wi-Fi hotspot."). As noted in the ZTE Concord II, "You must have qualifying service on your account in order to use the Mobile HotSpot feature." *Id*. Hence, MetroPCS controls whether or not the user may utilize the ZTE Concord II as a mobile hotspot.

## MetroPCS Controls Access to its Telecommunications System

50.     A subscriber who purchases one of the Accused Devices must subscribe to a MetroPCS data plan to use the device to connect to the internet over a wireless network used by MetroPCS. In order for an Accused Device to be connected to the wireless system used by MetroPCS, the device must have a SIM card provided by MetroPCS that contains information that is associated with a subscriber's account and which enables the Accused Device to be used

on the wireless network used by MetroPCS.  Each Accused Device is enabled or activated by

MetroPCS through information stored on a SIM card.  In fact, a SIM card can be purchased by or

reprogrammed for a subscriber to enable a device not purchased through MetroPCS to be used

on the wireless network used by MetroPCS (any such phone, tablet or other device utilizing a

MetroPCS SIM card and providing a LAN for tethering or otherwise connecting other devices, is

also included within the definition of "Accused Devices").  The SIM card is the key by which

MetroPCS controls which devices may connect to the wireless network used by MetroPCS.

Without MetroPCS's SIM card, the Accused Device is useless for its intended purpose of

facilitating wireless communications over a wireless network, although certain features such as

calculator or camera functionality may still be used.  The code, data and/or other information

stored on the SIM card allows MetroPCS to maintain control over which devices may be

connected to the wireless communications network used by MetroPCS.  The SIM card identifies

the subscriber to MetroPCS's network and facilitates MetroPCS in billing the user for the

services that the subscriber uses.  In addition, in the event the subscriber's service or subscription

is terminated, MetroPCS may de-activate the device via the use of the code, data and/or other

information stored on the SIM card so that the device cannot connect to the telecommunications

network used by MetroPCS.

   51.  At least as to the Accused Phones and the Accused Tablets, the data plan

typically, without additional fees, only allows the device itself to connect to the wireless network

used by MetroPCS.  In order to connect other devices through the LAN provided by one of the

Accused Phones or the Accused Tablets, historically, a subscriber has paid an additional fee or

subscribed to a more expensive and a higher capacity data plan for the ability to "tether"

additional devices through the Accused Phone or Accused Tablet over the LAN provided by

same.  *See, e.g.*, Exhibit 30, p. 26 ("To use your phone's Hotspot capability, you must have the Smartphone Mobile Hotspot service added to your rate plan.").  More recently, MetroPCS has charged $5 per month for mobile hotspot access if a customer is on a $40, $50 or $60 plan.  *See* Exhibit 33.  Even when an additional fee is not charged by MetroPCS for tethering and/or mobile hotspot service, the use of tethering and/or mobile hotspot service results in a higher amount of data downloaded by a subscriber which, in turn, results in higher fees to MetroPCS.

52.    Telecommunications services offered for sale and sold by MetroPCS in connection with the Accused Devices, including but not limited to the "Tethering" services, the "mobile hotspot" service, and the services sold in connection with data plans associated with the Accused Base Stations are referred to herein as the "Accused Services."  The MetroPCS Accused System and the Accused Devices are collectively referred to herein as the "Accused Instrumentalities."  The Accused Instrumentalities and the Accused Services are collectively referred to herein as the "Accused Instrumentalities and Services."

## MetroPCS's Infringing Acts

53.    MetroPCS has directly infringed and continues to directly infringe one or more claims of the `074 Patent by making, having made, importing, using, offering for sale, and/or selling the Accused Instrumentalities and Services.

54.    For example, but not as a limitation, MetroPCS's direct infringement of Claims 1, 3, and 128 of the `074 Patent is shown in each of the claim charts of Exhibits 34-38.  In addition, T-Mobile has and continues to infringe other Claims of the `074 Patent.

55.    Furthermore, MetroPCS has engaged in indirect infringement, with knowledge of the Asserted Patent, since at least as early as service of the present suit and continues to indirectly infringe one or more claims of the `074 Patent by providing its customers with the infringing Accused Instrumentalities and Services in order to enable those customers to use the

MetroPCS Accused System in connection with one or more of the Accused Devices, in a manner covered by one or more of the claims of the Asserted Patent.  MetroPCS has and continues to actively promote tethering and/or local hotspot functionality to its subscribers knowing that the subscriber's utilization of such tethering or local hotspot functionality on one or more of the Accused Devices constitutes infringement of one or more claims of the Asserted Patent.  Each subscriber that has tethering or local hotspot capability as part of their MetroPCS data plan or that pays an extra fee for tethering or local hotspot service in connection with an Accused Device directly infringes one or more claims of the Asserted Patent by their use of the Accused Instrumentalities in connection with tethering or local hotspot service.

## FIRST CLAIM FOR RELIEF
### (Infringement of the `074 Patent)

56.     Advanced Media incorporates paragraphs 1 through 55 as though fully set forth herein.

57.     Upon information and belief, Defendant T-Mobile has been, and is now, directly and/or indirectly infringing one or more claims of the `074 Patent by (1) making, importing, using, offering for sale, and/or selling the patented inventions, (2) by actively inducing others to use the patented inventions, and/or (3) by contributing to the use of the patented inventions in the United States.

58.     More particularly, without limitation, T-Mobile has been, and is now, directly infringing one or more claims of the `074 Patent by making, importing, using (including use for testing purposes), offering for sale, and/or selling the Accused Instrumentalities and Services, all in violation of 35 U.S.C. § 271(a).

59.     In addition and/or in the alternative, T-Mobile has been, and is now, indirectly infringing one or more claims of the `074 Patent by (1) inducing customers to use the Accused

Instrumentalities and Services to directly infringe one or more claims of the `074 Patent in violation of 35 U.S.C. § 271(b), and/or by (2) contributing to customers' direct infringement of one or more claims of the `074 Patent by their use of the Accused Instrumentalities and Services in violation of 35 U.S.C. § 271(c).

60.     More particularly, T-Mobile has engaged in indirect infringement by its conduct, since at least as early as November 6, 2012, in providing its subscribers with infringing Accused Instrumentalities in order to enable those customers to use the Accused Instrumentalities and Services in a way that directly infringes one or more claims of the Asserted Patent.  On information and belief, T-Mobile has intended, and continues to intend, to induce patent infringement by its customers, and has either had knowledge of the `074 Patent and knowledge that the induced acts would constitute infringement or has been willfully blind to the possibility that the induced acts would constitute infringement.  Alternatively, on information and belief, T-Mobile has made, imported, used, sold and/or offered for sale one or more of the Accused Instrumentalities and Services with knowledge of the `074 Patent and with the intent that such Accused Instrumentalities and Services be used in connection with an infringing system with the knowledge that such system would infringe, or in the alternative, being willfully blind that such system would infringe.

61.     Advanced Media has been damaged by the infringing activities of T-Mobile, and will be irreparably harmed unless those infringing activities are preliminarily and permanently enjoined by this Court.  Advanced Media does not have an adequate remedy at law.

62.     T-Mobile was given actual notice of the existence of the `074 Patent.  Despite such notice, T-Mobile has continued in willful acts of infringement without regard to the `074 Patent, and will likely continue to do so unless otherwise enjoined by this Court.

## **REQUEST FOR RELIEF**

WHEREFORE, Advanced Media requests the following relief:

(a)      A judgment in favor of Advanced Media that T-Mobile has directly infringed and/or has indirectly infringed by way of inducement and/or contributory infringement of one or more claims of the Asserted Patents;

(b)      A judgment that Advanced Media has been irreparably harmed by the infringing activities of T-Mobile, and is likely to continue to be irreparably harmed by T-Mobile's continued infringement;

(c)      Preliminary and permanent injunctions prohibiting T-Mobile and its officers, agents, servants, employees and those persons in active concert or participation with any of them, as well as all successors or assignees of the interests or assets related to the Accused Instrumentalities, from further infringement, direct and indirect, of the Asserted Patents;

(d)      A judgment and order requiring T-Mobile to pay Advanced Media damages adequate to compensate for infringement under 35 U.S.C. § 284, which damages may include lost profits but in no event shall be less than a reasonable royalty for their usage of the inventions of the Asserted Patents, including pre- and post-judgment interest and costs, including expenses and disbursements;

(e)      A judgment for treble damages for willful infringement as provided by 35 U.S.C. § 284;

(f)      A judgment declaring this an exceptional case and awarding Advanced Media its attorneys' fees as provided by 35 U.S.C. § 285;

(g)      A judgment awarding Advanced Media its costs as provided under FED. R. CIV. P. 54(d)(1);

(h)      A judgment for pre- and post-judgment interest on all damages awarded;

(i)      A judgment awarding Advanced Media post-judgment royalties; and

(j)      Any and all such further necessary or proper relief as this Court may deem just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Advanced Media hereby demands a trial by jury of all issues so triable.

Dated:  October 22, 2014                    Respectfully submitted,

                                            **BUETHER JOE & CARPENTER, LLC**

                                            By:      */s/ Brian A. Carpenter*
                                                     Brian A. Carpenter  *(Lead Counsel)*
                                                     State Bar No. 03840600
                                                     Brian.Carpenter@BJCIPLaw.com
                                                     Eric W. Buether
                                                     State Bar No. 03316880
                                                     Eric.Buether@BJCIPLaw.com
                                                     Christopher M. Joe
                                                     State Bar No. 00787770
                                                     Chris.Joe@BJCIPLaw.com
                                                     Mark D. Perantie
                                                     State Bar No. 24053647
                                                     Mark.Perantie@BJCIPLaw.com

                                                     1700 Pacific Avenue
                                                     Suite 4750
                                                     Dallas, Texas 75201
                                                     Telephone:      (214) 466-1273
                                                     Facsimile:      (214) 635-1829

                                                     *Attorneys for Plaintiff*
                                                     *Advanced Media Networks, LLC*